# CLAUDE E. SMALL AND ANOTHER v. ROBERT J. FLANAGAN.[1]

December 30, 1932.

No. 29,192.

[1]Reported in 246 N. W. 252.

564

*Leo J. Seifert, Boutelle, Bowen & Flanagan,* and *L. W. Simonet,* for appellant.

*Albert R. Allen,* for respondents.

HILTON, J.

Defendant, receiver of the Pioneer Gasoline Company, appeals from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

On March 17, 1930, plaintiffs, husband and wife, were the fee owners of certain real estate in the city of Fairmont, Minnesota. The husband attended to most of the transactions hereinafter referred to for them both. The property was subject to a contract for deed and a mortgage, the former running to one Courtright. The Pioneer Gasoline Company, hereinafter referred to as defendant, had leased a portion of the tract from Courtright and had erected an oil station thereon. On the date above mentioned plaintiffs started proceedings to cancel the contract for deed. About the same time an understanding was had between Courtright, plaintiffs, and defendant whereby the latter was to buy the property.

On March 24, 1930, Small was indebted to the First National Bank of Ceylon in the sum of $200. The bank insisted on payment and threatened attachment proceedings. Plaintiffs, because of this threat, were forced to and did give a note for that amount to the bank and assigned to it all of their rights under the contract for deed and also gave to it a warranty deed to the premises. Plaintiffs were never permitted to exercise any control over the situation from then on. The assignment and the deed were without question given for the purpose of furnishing security to the bank for the indebtedness. The defendant knew all this.

On March 26, 1930, the bank sent a letter to defendant stating that it held the contract for deed and also the warranty deed from plaintiffs, and stated therein that if defendant wished to protect its interest in the property it should make a settlement with it. A

copy of this letter was mailed to Small. All the transactions on behalf of the bank were conducted by Gruber, its president.

Pursuant to the understanding hereinbefore referred to, defendant, on August 1, 1930, purchased the property by assuming the mortgage ($1,470.14) and certain mechanics' liens, and agreeing to pay plaintiffs $770 in cash. For the balance of the purchase price ($700) defendant agreed to deliver to plaintiffs 70 shares of its preferred stock of a par value of $10 per share. Plaintiffs executed a deed to the premises running to defendant. This deed was also turned over to the bank. Defendant made the $770 cash payment to the bank and on August 5, 1930, sent the stock certificates to it. From the cash payment so made the bank deducted various amounts owing by plaintiffs to it, including house rent to August 3, 1930, and the amount of an execution against plaintiffs. On August 7 it paid the balance, $322.27, to plaintiffs. At the same time it returned to plaintiffs the $200 note, marked paid, and the unrecorded warranty deed given to it by them on March 24. Plaintiffs were not then indebted to the bank in any amount. The stock certificates were retained at the bank.

Plaintiff Small testified that he did not hear that the stock certificates were in the possession of the bank until a considerable time after the sale of the property to the defendant; that he was then so informed by one of the officers of defendant; that he then demanded that the bank deliver the certificates to him, but that Gruber would not listen to him; that he thereafter made numerous demands by telephone for the delivery of the stock, but was met with a statement by Gruber that he knew nothing about it; that plaintiffs had contracted to sell the stock and had executed an assignment thereof to another party on October 23, 1930; that he had so informed the bank. Small also testified that about four months after the closing of the deal he made a trip to Ceylon and again demanded delivery of the stock certificates; that it was again refused; that the ground then given for such refusal was that plaintiffs owed the bank for house rent. This evidence was not disputed. Neither Gruber nor anyone else connected with the bank was a witness at the trial.

The stock was never delivered to plaintiffs, nor did either of them ever see the certificates until December 4, 1930, when the sheriff, by direction of the bank (the certificates being still in its possession) levied thereon under execution issued on a judgment owned by a third party. The circumstances of this levy need not be recited. However they clearly support the view that the bank had never been representing plaintiffs' interests in connection with the certificates. This action was brought to recover the par value of the stock as the unpaid balance of the purchase price and to have the same declared a lien upon the property conveyed.

In defendant's letter of August 5 transmitting the stock certificates to the bank it was stated:

"Please hold these certificates a few days until everything is straightened out—be sure the title is clear, and when everything is in readiness and we have the warranty deed, deliver the certificates to Mr. Small,—having him sign the enclosed receipt and return to us at once in the return envelope enclosed."

On the same date, August 5, defendant wrote to its attorney at Fairmont, among other things stating:

"We are mailing out the stock certificates issued to C. E. Small, to the bank at Ceylon, in the Fairmont Filling Station matter. We would like to have the abstract of title, which you have in your possession. If this is not strictly up-to-date, kindly have it brought up-to-date."

On September 26 Small wrote the defendant, stating:

"Some time ago when I made a deal on the station here at Fairmont, I told you to hold the stock till little later before signing. And you did. * * * I am in a hurry to get the stock. I may trade it off and buy more that would help both you and myself."

On October 3, 1930, defendant, in answer to this letter, wrote as follows:

"I suppose[d] the banker had already turned the stock over to you. If he has not kindly see him and get the stock or let me

know and I will write the banker a letter and tell him to turn everything over to you."

Defendant contends that the bank was acting as the agent of plaintiffs, and therefore delivery to it was delivery to plaintiffs. Plaintiffs' contention, of course, is that the bank was the agent of defendant and not theirs. This question as to agency, under a charge of the court unexcepted to, was clearly submitted to the jury for its determination, as was also the question whether the bank was either an escrow holder or intermediary in possession of the stock. The jury returned a verdict in favor of plaintiffs for the value of the stock, and the court declared that amount to be a lien upon the land.

There were here, without question, fact issues for the jury's determination. Its verdict resulted from its conclusion that the bank was the agent of defendant and not the agent of plaintiffs, and that it was not an escrow holder or an intermediary. A reading of the testimony and the exhibits manifestly shows that the verdict had sufficient support. The trial court in its memorandum well stated:

"I am of the opinion that the evidence is ample and sufficient to sustain a finding that the stock in question was never delivered by defendant to the plaintiffs. * * * The consideration for the conveyance of the property involved was never paid by the defendant by reason of its failure to deliver the stock."

No reversible errors occurred at the trial.
Affirmed.